MAY 10 1963

**MEMORANDUM FOR THE HONORABLE McGEORGE BUNDY**
Special Assistant to the President

Re:    Proposal that the President accept honorary Irish citizenship.

The Attorney General has asked me to respond to your memorandum of April 17, 1963, with respect to the legal aspects of the proposal that the President accept "honorary Irish citizenship." For the reasons set forth hereafter, I believe that acceptance by the President of honorary Irish citizenship would fall within the spirit, if not the letter, of Article I, § 9, clause 8, of the Constitution which requires that an individual who holds an office of profit or trust under the United States must obtain the consent of Congress in order to accept "any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince or foreign State." Nevertheless, the procedure which has developed under the constitutional provision and under section 3 of the act of January 3, 1881 (21 Stat. 604; 5 U.S.C. 115), a statute which implements the provision,

would permit the President to participate in the formal ceremonies, accept the written evidence of the award and have it deposited with the Department of State, subject to the subsequent consent of Congress. Moreover, even if Congress should thereafter fail to enact consenting legislation, the President could probably have the document conferring honorary Irish citizenship delivered to him by the Department of State after he leaves the White House.

At the outset, it should be emphasized that what would be conferred upon the President would not be Irish citizenship but merely honorary Irish citizenship. Your memorandum of April 17, 1963, indicated that it was originally the intention that the grant be conferred pursuant to section 12 of the Irish Nationality and Citizenship Act, 1956. That act provides that "Irish citizenship" may be granted to individuals or the children or grandchildren of individuals who have "done signal honour or rendered distinguished service to" Ireland, but it makes it clear that once the grant is made the individual "shall * * * be an Irish citizen." Accordingly, action pursuant to this statute would impose upon the President whatever duties and obligations are ordinarily

2

attached to Irish citizenship and would raise the serious problems attendant upon an undertaking by a President of fealty to another nation.

As a result of discussion of this problem with the Irish Ambassador, the Government of Ireland has drafted a special act, a copy of which is attached. The act would provide that "The President [of Ireland] may by warrant confer on John Fitzgerald Kennedy, President of the United States of America, the title of honour of Honorary Citizen of Ireland." In an Aide-Mémoire of April 30, 1963, which is also attached, the Irish Ambassador states:

"The Attorney General of Ireland has given opinion that the Bill as drafted would not confer citizenship with its attendant duties and obligations but only a title of honor."

I agree. In fact, the Department of Justice took a similar position when honorary United States citizenship was conferred upon Sir Winston Churchill. H. Rept. No. 57, 88th Cong., 1st Sess. Consequently, the problems which might have arisen as a result of dual citizenship are no longer presented.

However, the question still remains whether acceptance comes within the letter or spirit of Article I, § 9, clause 8, which provides:

3

[10] "No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State."

This clause was adopted unanimously at the constitutional convention as a means of preserving the independence of foreign ministers and other officers of the United States from external influences. 3 Madison, Papers 1406 (1840). It is virtually copied from a similar provision in Article VI of the Articles of Confederation. The constitutional provision has been interpreted as being "particularly directed against every kind of influence by foreign governments upon officers of the United States, based on our historic policies as a nation." 24 Ops. Atty. Gen. 116, 117 (1902) (emphasis in original); see also Story's Commentaries on the Constitution, § 1352 (4th ed.).

It will be noted that the proposed Irish statute describes what would be conferred upon the President as a "title of honour * * *." As such, it could be argued that what would be conferred falls within the literal language of the constitutional provision. Ambassador

4

Kiernan has advised us that the bill could be redrafted to omit the reference to a "title of honour." However, I do not believe that the legal problem would be significantly modified if this should be done. The spirit of the provision clearly extends to any type of obligation to foreign countries, and the designation of what is conferred appears to be of little relevance.

Moreover, in analyzing P. L. 88-6 and Proclamation No. 3525 of April 9, 1963, which operated to confer honorary citizenship of the United States upon Sir Winston Churchill, this Department took the view that what would be conferred upon him would be "similar in effect to * * * a medal or decoration * * *." H. Rept. No. 57, 88th Cong., 1st Sess., p. 3. The Committee stated that it "subscribes to the interpretation of the import of this legislation as outlined in the report rendered by the Department of Justice * * *." Id., p. 3. And medals and decorations have always been regarded as coming within the constitutional provision. [1]

_____

[1] See e.g., Message of President Jackson, stating that the Constitution prevented him from accepting a medal tendered to him by the Republic of Colombia, and that he was placing it at the disposal of Congress. Congress did not grant its consent to acceptance. The House Committee on Foreign Affairs merely recommended that the medal be deposited with the Department of State. 2 Richardson, Messages and Papers of the Presidents 466; H. Rept. No. 107, 21st Cong., 1st Sess. (1830). See also 5 U.S.C. 114, prohibiting an officer of the United States from wearing a decoration without the consent of Congress.

5

although it has never been precisely articulated whether one of these constitutes a "present, Emolument, Office, or Title." Thus, section 3 of the Act of January 31, 1881, provides:

10 "Any present, decoration, or other thing, which shall be conferred or presented by any foreign government to any officer of the United States, civil, naval, or military, shall be tendered through the Department of State, and not to the individual in person, but such present, decoration, or other thing shall not be delivered by the Department of State unless so authorized by act of Congress." (5 U.S.C. 115)

The constitutional provision requires the consent of Congress to the acceptance of the enumerated honors and presents "of any kind whatever." Since the statute is intended to implement this provision, the phrase "other thing" should probably be construed in a similarly inclusive manner. Accordingly, it could be reasonably contended that a warrant or other documentary evidence of honorary Irish citizenship that may be presented to the President is an "other thing" within the meaning of the statute.

Literally read, the statute precludes direct tender of a present or mark of honor to an officer of the United States; the tender is to be through the Department of State. However, on the ground that it avoids offense to other countries, a custom has developed under which officers of the United States

6

may accept foreign honors tendered to them and subsequently have them deposited in the Department of State. This procedure has been treated as substantial compliance with the statute. If Congress subsequently enacts legislation consenting to acceptance (see, e.g., Act of August 3, 1956, 70 Stat. A171), delivery is made to the recipient. [2] Therefore, if the President should accept the tender of honorary Irish citizenship, it would be appropriate for him to include in his acceptance remarks a statement that he is thereupon placing the warrant in the hands of the United States Ambassador to Ireland in accordance with United States law. If the President handled the matter in this way, it would be difficult for anyone to contend that his action was

[2] Under 5 U.S.C. 115a, the Secretary of State is directed to submit to each alternate Congress a list of retired personnel for whom the Department of State is holding decorations, medals or other marks of honor pursuant to 5 U.S.C. 115. In a memorandum to department and agency heads, dated April 13, 1954, President Eisenhower directed that lists submitted to Congress pursuant to 5 U.S.C. 115a be limited to retired personnel. Of course this direction has not prevented Congress from granting the required consent to incumbent officers. 70 Stat. A171, supra.

inconsistent with the constitutional provision or the statute. /3/ In order to minimize possible congressional criticism in that regard, it might also be appropriate to advise the Chairman of the House and Senate Foreign Relations Committees in advance that this procedure will be followed.

Two final points might be made. First, some Presidents have treated presents which they have received as gifts to the United States, rather than as personal gifts. They have therefore taken the view that acceptance is not subject to the constitutional provision. This view was apparently followed by President Lincoln, who received a "Diploma" from the Republic of San Marino declaring that "the President pro tempore of the United States of America" was a citizen of that Republic. Although Lincoln wrote the Regent Captains of San Marino thanking its Council for the honor that it had "conferred on me" (4 Collected Works of

---

/3/ As a legal matter, the consent of Congress can be obtained either in advance or following receipt of anything covered by Article I, section 9, clause 8. We have, however, been able to locate only one statute in which it is clear that the consent has been granted in advance, 11 Stat. 152 (Res. 3, 1856), and this did not involve a President. On the other hand, in the only instance in which we have been able to discover a grant of consent to a President, it followed receipt. See 29 Stat. 759 (1896), authorizing delivery to Benjamin Harrison of medals presented to him by Brazil and Spain during his term as President. The Harrison precedent would strengthen the view that the procedure suggested above is consistent with constitutional practice.

8

_Abraham Lincoln_, 360 (1961)), he had the document deposited with the Department of State and it is now in the National Archives. The "Diploma" was conferred on the President of the United States "pro tempore," and it indicates that the action to authorize its issuance was taken while Buchanan was still President. The circumstances thus appear to have differed markedly from those here involved. It seems clear that Ireland proposes to confer honorary citizenship on President Kennedy personally, not on him as the President of the United States for the time being.

Second, we are informed that it is the practice of the Protocol Office of the State Department, the custodian of gifts and other marks of honor deposited pursuant to the 1881 Act, to deliver to a former officer who has severed any official relationship with the United States, upon his request and without referral to Congress, a gift or other mark of honor tendered to him during his incumbency and deposited under the Act. Accordingly, even if Congress should not act in this matter, the President could probably obtain the warrant when he no longer holds office. [4]

4/ While a former President is entitled to a monetary allowance of $25,000 per year (P. L. 85-745, 72 Stat. 838, 3 U.S.C. 102 ff.), he could hardly be considered to hold an "Office" within the meaning of the constitutional prohibition.

I assume that the President will independently appraise the policy considerations involved in acceptance of the foreign honor here involved. In this regard, he may wish to know that President Wilson refused all foreign decorations while in office.[5/] On the other hand, it is clear that this attitude does not represent an established policy of the Presidency, as evidenced by the incidents referred to above, involving Presidents Jackson, Lincoln and Benjamin Harrison.

/ Norbert A. Schlei
/ Assistant Attorney General
/ Office of Legal Counsel

Enclosures (3)

_5/_ Edith Bolling Wilson, _My Memoir_ 243 (1938).

PRESIDENT KENNEDY BILL, 1963.

Arrangement of Sections.

Section

1. Conferring of title of honour on President Kennedy.

2. Short title.

Draft of

Bill

entitled

An Act to enable the title of honour of
Honorary Citizen of Ireland to be conferred
on John Fitzgerald Kennedy, President of the
United States of America.

BE IT ENACTED by the Oireachtas as follows:

Conferring
of title
of honour
on Presi-
dent
Kennedy.

1.    The President may by warrant confer on John
Fitzgerald Kennedy, President of the United States
of America, the title of honour of Honorary Citizen
of Ireland.

Short
title.

2.    This Act may be cited as the President Kennedy
Act, 1963.

MEMORANDUM

1963

The Government of Ireland is prepared to promote

special legislation to enable the title of Honorary

Citizen of Ireland to be conferred on President Kennedy,

instead of pursuing the idea of offering citizenship as

a token of honor under Section 12 of the Irish Nation-

ality and Citizenship Act, 1956. A draft Bill has been

prepared with this objective in mind. The text of the

Bill is conveyed herewith.

The Attorney General of Ireland has given opinion

TO THE HEADS OF EXECUTIVE DEPARTMENTS
AND ESTABLISHMENTS:

Except as other procedures may be authorized by law, as in the case of
decorations which may be authorized for military combat or war-time
service, each department and establishment will hereafter be governed
by the requirements of the Act of June 27, 1934 (5 U.S.C. 115a) with
respect to requesting the consent of Congress for retired personnel to
accept gifts, decorations, awards, or any other thing tendered to them
by a foreign government. No request shall be submitted hereafter for
other than retired personnel.

1. In the month of April, 1954, and one full month before the beginning
of the Second Session of each alternate Congress thereafter, each agency
will compile and transmit to the Secretary of State a list of its retired
personnel for whom the Department of State under the provisions of the
Act of January 31, 1881 (5 U.S.C. 115) is holding decorations, orders,
medals, or presents tendered them by foreign governments and for the
acceptance of which the agency desires to request the consent of the
Congress. Supporting documentation will be submitted with the list and
will include the name of the intended recipient, the date on which retired,
the name of the donor government, the name or title or other identifica-
tion of the thing to be accepted, and the specific reason for which it was
tendered.

2. The Secretary of State will have prepared an omnibus authorizing bill
covering the retired personnel listed by departments and will transmit
such bill and consolidated list to the Congress.

3. Each department and establishment will be prepared to provide, on
behalf of any such retired person, such further information as the appro-
priate Committees of the Congress may require with respect to any award
tendered to such retired personnel.

4. Before submitting any consolidated list to the Congress, the Secretary of State will review the list in order to ascertain if there is any objection to the acceptance of any award therein proposed from the point of view of the foreign policy of the United States. If there be any such objection, the matter may be presented to the President for his decision.

5. These instructions supersede those of January 6, 1950, with respect to decorations tendered by foreign governments.

/s/ Dwight D. Eisenhower